LOUIS A. ZAYAS, ESQ. (LZ-1881)
LAW OFFICES OF LOUIS A. ZAYAS, L.L.C.
8901 Kennedy Boulevard, Fifth Floor
North Bergen, N.J. 07047
(201) 977-2900
Counsel for the Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA GONZALEZ, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| BARBARA CRISCIONE, Individually and in her Official Capacity; GUTTENBERG HOUSING AUTHORITY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

The Plaintiff MARIA GONZALEZ, by and through her attorney, LOUIS A. ZAYAS, ESQ. of the Law Offices of Louis A. Zayas, L.L.C., alleges as follows:

## INTRODUCTION

1. This is a civil rights action to redress the deprivation of Plaintiff's civil rights protected by the First Amendment to the United States Constitution and under the Civil Rights Act of 1871, Title 42 USCA § 1983, such as Plaintiff's speech involving matters of public interest and importance, participation in constitutionally protected activities, and complaints of improper and unlawful activities in the workplace.

2. Plaintiff further alleges that Defendants violated Article 1, Sections 6 and 18 of the New Jersey State Constitution which protects a person's free speech and other related protected activities.

3.      Plaintiffs further allege violations under the Conscientious Employee Protection Act ("CEPA") N.J.S.A. 34:19-1, *et seq*.

## PARTIES

4.      Plaintiff Maria Gonzalez is an individual residing at 6808 Adams Street, Town of Guttenberg, County of Hudson, New Jersey.

5.      Defendant Guttenberg Housing Authority ("GHA") is a quasi-municipal corporation with a principal place of business located at 6900 Broadway, Town of Guttenberg, County of Hudson, New Jersey.  The GHA is governed by the Board of Commissioners ("Commissioners").

6.      Defendant Barbara Criscione ("Criscione") is the Executive Director of the GHA, a position she has held since 2001.  As Executive Director, Criscione is responsible for the day-to-day operations of the GHA.  She is also one of the final decision makers for purposes of personnel decisions and other GHA policies and procedures.  Criscione is sued in her official and individual capacity for purposes of affecting the full declaratory, injunctive, compensatory, and punitive damages demanded by the Plaintiff.

## JURISDICTION

7.      Jurisdiction of this court is invoked pursuant to Title 28 USCA §§ 1331, 1343 and 2201; Rules 57and 18(a) of the Federal Rules of Civil Procedure, and the doctrine of pendent jurisdiction.  Jurisdiction is founded on the existence of a deprivation of federal civil rights, and on the existence of state law claims which derive from a common nucleus of operative facts.

## FACTS

8. Gonzalez was employed as a Housing Manger by Defendant Guttenberg Housing Authority from June 1, 2006, until June 15, 2010.

9. In May 2009, Plaintiff and an alleged person(s) wrote an anonymous letter regarding serious illegal conduct by Executive Director Criscione and other GHA employees to the Office of the Inspector General, HUD, and twenty-one other people, including Joseph V. Doria, Jr., a Commissioner for the State of NJ Department of Community Affairs; Commissioner Benitez; Mayor Brian P. Stack; Mayor Drasheff; Councilman Haberman; Lieutenant Magenheimer; the Jersey Journal; Chairperson Joanne Martin; Commissioner Malik; Prosecutor Edward J. De Fazio; Councilman Caso; Councilwoman Martinez; Mayor Nicholas J. Sacco; Attorney Terrence J. Corriston; Commissioner Tessler; Commissioner Perez; Gaetano T. Gregory; Councilwoman Florio; Councilman Velez; the North Bergen Reporter; and Vascilios Scoullos.

10. Gonzalez' letter included the following allegations of wrongdoing:

   1. Violations of law and standards of conduct by Executive Director, Assistant Executive Director and Housing Manager;

   2. Purchase of personal residence for the Executive Director together with Assistant Executive Director and Housing Manager for convenience and not disclosing transaction to Housing Board Members causing a conflict of interests.

   3. Arranging for unjustified salary increases for favorite staff in return for favors like buying personal residence for Executive Director and getting an automobile under their names in exchange for perks and director financial goals.

   4. Executive Director working an average of three hours a day and taking days off at least one day a week.

   5. Manipulating appointment and attendance of board members to board meetings for the purpose of selective voting tactics and control of the board.

      6. Executive Director taking extended unjustified absences and time away from administrative duties not properly supervising office operations and still continuing to collect a paycheck.

      7. Serious waste and abuse of taxpayer and government funds that do not further HUD's mission and goals.

      8. Incompetence, mismanagement and inattention causing great harm to public and creating public mistrust by wasting federal funds.

      9. Knowingly allowing tenants to commit fraud by allowing them to purchase real estate property and having businesses and not declaring income earned by them at time of re-examinations or throughout the year because of personal, close friendships and in exchange for personal favors.

      10. Allowing same tenants to be appointed and serve as housing board commissioners for the sole purpose of financial and personal gain. (Commissioners Ana Betances and Julio Pena).

      11. Permitting and housing friends and personal acquaintances in exchange for favors.

      12. Executive Director negotiating a contract for herself with a substantial raise.  Contract may not be legal since it was recently signed and registered with the State of New Jersey.

      13. Allowing family members of commissioners to commit fraud by purchasing real estate property and not reporting it to HUD and even listing a false address (Ana Betances and Maria Gonzalez, Ana's mother).

      14. Executive Director allowing tenant with past criminal history (child molestation) to work in the office while tenant is receiving public assistance. Exception made because this tenant is son of Housing Manager.

11.    Criscione knew that Plaintiff and at least another unknown person(s) wrote and sent the aforementioned letter.

12.    As result of the aforementioned complaint of alleged unlawful activities by Criscione in her official capacity, Criscione began to harass and retaliate against

Plaintiff. Criscione even went so far as to take Plaintiff into the bathroom, turn on the air and the water, and ask "were you the one that sent the letter?"

13. On November 24, 2009, Criscione sent Gonzalez a letter stating that if Gonzalez work performance did not improve in two months, Gonzalez would be dismissed. Gonzalez, however, was performing her duties and responsibilities in a satisfactory manner.

14. On November 30, 2009, Gonzalez sought to complain to the Board of Commissioners about Criscione's retaliatory conduct. Gonzalez drafted a letter to present to the Board of Commissioners requesting a "meeting or hearing before the Board of Commissioners to discuss this matter." Criscione intercepted that letter and prevented Gonzalez from furnishing it to the Commissioners.

15. On February 20, 2009, Gonzalez received a letter from Criscione stating that she was to be demoted, effective March 1, 2009, from Housing Manager (with a salary of $55,000 per year) to Assistant Executive Secretary with a salary of $40,000 per year, based on her "2008 evaluation."

16. This demotion was in retaliation for Plaintiff's whistle-blowing. On June 15, 2010, the Board of Commissioners terminated Gonzalez' employment with the Guttenberg Housing Authority, in retaliation for Plaintiff's exercise of her rights.

17. In blatant retaliation for Plaintiff's whistle-blowing, the GHA filed a lawsuit against Plaintiff on July 11, 2011, with false allegations of "computer related offenses," "negligence and negligence per se," "prima facie tort," and "conversation."

18. Defendant Criscione used a law firm to file a frivolous lawsuit in Superior

Court as a means to further retaliate against Gonzalez and discover the identity of the other whistleblower.  In the lawsuit, Criscione falsely alleges that Plaintiff improperly accessed a mailing list relating to individuals receiving government housing.

19. The purpose and scheme of the lawsuit is to oppress, harass, and punish Plaintiff for engaging in a protected activity, and to obtain information regarding the co-author of the anonymous letter.  Gonzalez had permission to access the aforementioned data as a secretary and there were no rules or regulations prohibiting Gonzalez' actions.

20. The aforementioned lawsuit in state court is designed to advance Criscione's unlawful scheme to discover the identify of the second whistleblower and further retaliate against Gonzalez by burdening her with the expense and stress of litigation.

21. All of the allegations against Plaintiff in the above lawsuit are frivolous and  false, fabricated by Criscione to retaliate against Gonzalez because of her  whistle-blowing activities.

22. During the course of the aforementioned lawsuit in state court, Criscione's attorney advised Gonzalez to disclose the identify of the whistleblower if she desired to settle the case with Criscione and avoid the consequences of further litigation.

23. Criscione's litigation in state court is itself is a form of unlawful retaliation because it frivolous and designed primarily to advance Criscione's retaliatory scheme.

24. Prior to Gonzalez' whistleblowing, she had been performing her duties and responsibilities in a satisfactory manner. Gonzalez' whistleblowing activities were undertaken in her capacity as a private citizen, not part of her duties as a secretary.

# I.
# COUNT I
# §1983 CRISCIONE

25.    All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

26.    Defendant's retaliatory conduct, acting under the color of law, subjected Plaintiff to the deprivation of her rights under the First and Fourteenth Amendment to the United States Constitution as alleged herein.

27.    Defendant's conduct was intended to and did infringe upon Plaintiff's exercise of her freedom of speech under the First and Fourteenth Amendments to the United States Constitution, as alleged herein.

28.    Defendant further violated Plaintiff's right to petition the government for redress of grievances due to Defendant's retaliatory and unlawful practices and policies.

29.    As a direct and proximate result of the aforementioned, Plaintiff's constitutional rights secured under the First and Fourteenth Amendments to the United States Constitution were violated.  As a result of the foregoing, Plaintiff has suffered and will continue to suffer damages in an amount to be determined by a jury.  Due to Defendant's willful and malicious conduct, Plaintiff seeks punitive damages in Defendant's individual capacity in an amount to be determined by a jury.

# II.
# SECOND COUNT
# §1983 GHA

30.    All of the allegations in each of the foregoing paragraphs are incorporated by reference as if fully set forth herein.

31. At all times relevant to this complaint, Defendant GHA was Plaintiff's employer.

32. Defendant knew or was deliberately indifferent to Criscione's pattern of retaliatory conduct and harassment, including allegations by the Plaintiff that such unlawful activities were taking place.

33. Despite GHA's knowledge of said unlawful employment practices, GHA failed to take any remedial or corrective action to stop it.

34. Moreover, GHA failed to implement any anti-retaliation policies, training, or supervision to comply with federal and state law. Such failure to implement said training amounted to deliberate indifference.

35. Acting under color of law, and pursuant to official policy, custom and practice, and with deliberate indifference to the rights of the Plaintiff, GHA did infringe upon Plaintiff's constitutional rights to engage in protected activities and expression, participate in the political process, and petition the government and courts to obtain redress secured under the First and Fourteenth Amendments to the United States Constitution.

36. As a direct and proximate result of Defendant's conduct, Plaintiff has been and is presently suffering serious mental and emotional distress, anxiety, ridicule, humiliation, indignity, loss of esteem, embarrassment, loss of civil and constitutional rights, loss of wages and fringe benefits, and loss of future employment prospects in an amount to be determined by a jury.

## III.
## COUNT THREE
## NEW JERSEY CONSTITUTION §6

37. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

38. Plaintiff exercised her right to freedom of speech guaranteed by the New Jersey Constitution, Art. 1 §6 by mailing the above described letter in May 2009, alleging serious misconduct.

39. Through the above letter, Plaintiff complained of unlawful activities by Criscione in her official capacity as an elected official.

40. As a result of Plaintiff's letter, Defendants engaged in a pattern of retaliatory conduct, amounting to a continuing violations, to harass, embarrass, humiliate, ostracize and otherwise retaliate against Plaintiff, ultimately demoting and terminating her employment and filing a lawsuit against her, as described above.

41. As a result of the foregoing, Plaintiff has suffered, and continues to suffer, damages in an amount to be determined by a jury.

## IV.
## COUNT FOUR
## NEW JERSEY CONSTITUTION §18

42. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

43. Plaintiff exercised her right to petition the government for redress in November 30, 2009, when she attempted to write the Commissioners requesting a hearing regarding her demotion, but her letter was intercepted by Criscione.

44.     Plaintiff's purpose in writing the above letter was to seek redress of her rights.

45.     As a result of Plaintiff's letter, Defendants engaged in a pattern of retaliatory conduct, amounting to a continuing violations, to harass, embarrass, humiliate, ostracize and otherwise retaliate against Plaintiff, ultimately demoting and terminating her employment and filing a lawsuit against her, as described above.

46.     As a result of the foregoing, Plaintiff has suffered, and continues to suffer damages in an amount to be determined by a jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an order finding as follows:

1.     That Plaintiff recover from Defendant Criscione punitive damages, compensatory damages, and exemplary damages in an amount to be determined by a jury and attorney's fees in an amount to be determined by the Court.

2.     That Plaintiff recover from Defendant GHA punitive damages, compensatory damages, and exemplary damages in an amount to be determined by a jury and attorney's fees in an amount to be determined by the Court.

3.     That the Court grant such other and further relief as it deems just and proper.

Dated: June 15, 2012

/s/LOUIS A. ZAYAS, ESQ.
_____
LOUIS A. ZAYAS, ESQ (lz-1881)